James T. STEWART, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 630–82C.

United States Claims Court.

Sept. 27, 1983.

Norman Sheer, Reisterstown, Md., with whom was John J. Carlin, Baltimore, Md., of counsel, for plaintiff.

Jane W. Vanneman, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant.

## ORDER

KOZINSKI, Chief Judge.

This case presents the question of whether, upon the death of the payee of a social

security benefit check that was improperly paid on a forged indorsement, the payee's estate may maintain an action under the Check Forgery Insurance Fund Act (CFIFA), 31 U.S.C.A. § 3343 (West 1983).

## FACTS

In 1978 a check for $12,693.46, representing accrued disability insurance benefits under Title II of the Social Security Act, was issued to Joseph Stewart. The check never reached Mr. Stewart because it was negotiated by someone else under a forged indorsement. Mr. Stewart appears first to have learned of the check in March 1979. He then initiated an investigation which uncovered the forgery and on May 15, 1980, filed a claim with the Department of the Treasury for the proceeds of the check. Some two weeks later Joseph Stewart died.

Treasury eventually reclaimed the money. However, because Joseph Stewart had died, Treasury did not issue a new check. Instead it returned the proceeds to the Social Security Administration (SSA) for disposition. SSA then paid the money to the deceased's two children pursuant to its regulations.

Plaintiff in this case is James Stewart, the administrator of his brother Joseph's estate. He has brought suit under the CFIFA for the proceeds of the forged check. Plaintiff claims that Treasury should have issued a substitute check to him rather than returning the funds to SSA. The government has moved to dismiss arguing that plaintiff may not maintain the action under the CFIFA.

## DISCUSSION

Congress created the Check Forgery Insurance Fund to deal with the situation where a check issued by the Treasury is paid on a forged indorsement. If certain requirements are met, the Treasurer may issue a substitute check in settlement of a claim made under the Act. 31 U.S.C.A. § 3343 (West 1983). The Court of Claims deemed the CFIFA to be a money mandating statute supporting the court's jurisdiction under the Tucker Act. *See Olson v.* *United States,* 194 Ct.Cl. 297 [437 F.2d 981] (1971); *Duden v. United States,* 199 Ct.Cl. 668 [467 F.2d 924] (1972). However, the right to bring an action in this court is circumscribed by the terms of the statute on which jurisdiction is premised. The question presented is who is a proper plaintiff in a CFIFA action, or more formally, who has standing to maintain such an action.

The CFIFA and its implementing regulations provide that a claim under the Act may be made by the person who was the "payee or special indorsee" of the forged check and that any settlement check shall be issued "to the payee or special indorsee." 31 U.S.C.A. § 3343 (West 1983); 31 C.F.R. § 235.3 (1982). Under the plain language of the statute and regulations, only the "payee or special indorsee" of a forged check can be a plaintiff in an action under the CFIFA. There is no suggestion that plaintiff here is a special indorsee. However, plaintiff argues that as administrator of the deceased payee's estate, he should be allowed to step into the payee's shoes for the purpose of maintaining this action.

Whether an administrator can exercise the rights of a deceased payee depends upon whether those rights survive the payee's demise. With regard to checks issued by the Treasury, the survival of those rights depends upon the type of payment that a check represents. Treasury regulations establish that, except for checks representing three types of payments not in question here, the right to cash Treasury checks terminates upon the death of the payee. 31 C.F.R. § 240.10 (1983). An administrator is not authorized to indorse and cash such checks but must return them to the appropriate federal agency for a determination of who, if anyone, is to be paid in lieu of the deceased. *Id.* § 240.10(b) (1983). Thus, had Joseph Stewart received the original check and died before cashing it, plaintiff would not have been entitled to negotiate the check and add its proceeds to the estate. Rather, he would have been required to return it to SSA for a determination of entitlement. The payee's rights

therefore are not of the type that survive his death, and consequently those rights cannot be exercised by his administrator.

The interposition of the CFIFA does not alter this conclusion. Had Treasury issued a settlement check on the claim, it would have been in the name of the deceased payee. 31 U.S.C.A. § 3343 (West 1983); 31 C.F.R. § 235.3 (1982). As Joseph's administrator, plaintiff would have been no more entitled to cash the substitute check than the original one. Plaintiff's action is premised on Treasury's failure to issue such a substitute check; however, because he could not indorse or cash it, such a check would have been worthless paper in his hands. Plaintiff therefore has not been harmed by Treasury's alleged error and lacks standing to bring this action.

The result reached here is not at odds with *Olson v. United States,* 194 Ct.Cl. 297 [437 F.2d 981] (1971), where an executor was allowed to maintain an action under the CFIFA. *Olson* does not specifically address the executor's standing and it is clear from the facts why it does not: the forged check represented proceeds from the redemption of government bonds. Such funds fall within the narrow exception for payments as to which the rights of the payee devolve upon the executor. The executor is entitled to indorse and cash checks representing such funds and add the proceeds to the estate. 31 C.F.R. § 240.-10(a)(1)(i) (1983). Under those circumstances, standing is not an issue because the executor is specifically given all of the rights of the deceased and Treasury's failure to issue the check diminishes the estate.

## ADDITIONAL CONSIDERATIONS

This is essentially a family quarrel for control of money. After Treasury returned the reclaimed funds to Social Security, the money—some $12,000—was paid over to the deceased's children pursuant to 42 U.S.C. § 404(d) (1976) and 20 C.F.R. § 404.503 (1983). Because the children were minors, the checks were made payable to their mother, Joseph Stewart's former wife. Joseph's brother, plaintiff here, now claims the same funds on behalf of the same children who are the only beneficiaries of Joseph's estate. When questioned about this apparent anomaly, counsel implied plaintiff could not be sure that the mother (since remarried) was using the money for the benefit of the children, although he freely admitted that he had no information to the contrary.

While plaintiff no doubt would prefer to be the one who controls the expenditure of funds for his deceased brother's children, it hardly seems appropriate—or fair—to ask the government to pay the same money twice to afford him that luxury. This matter should have been raised before the Social Security Administration, the agency charged with determining entitlements under Title II of the Social Security Act. Upon exhaustion of administrative remedies, any SSA decision could have been appealed to district court. 42 U.S.C. § 405(g), (h) (1976 & Supp. V 1981); 20 C.F.R. § 404.900 (1983). *See, e.g., Sparks v. Taggart,* 364 F.Supp. 429 (C.D.Cal.1973). Having chosen a different approach, plaintiff must now accept the consequences of that decision.

## CONCLUSION

The motion to dismiss is granted. The clerk is directed to dismiss the complaint with costs to the prevailing party.